IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOSEPH SERIAN,

       Plaintiff,

v.

                                    CIVIL ACTION NO. 1:08cv74
                                        (Judge Keeley)

PENGUIN GROUP (USA), INC., LARRY
JACKSON KOLB, and JOHN DOES 1-10,

       Defendants.

## MEMORANDUM OPINION AND ORDER DISMISSING CASE

Pending before this Court are the following five motions: 1) a motion to dismiss filed by defendants Penguin Group (USA), Inc. ("Penguin Group") and Larry Jackson Kolb ("Kolb"); 2) "Motion for Permission to Amend Complaint, or in the Alternative, Motion to Clarify, so as Not to Dismiss Case," filed by plaintiff Joseph Serian ("Serian");[1] 3) "Former Plaintiff's Robert Sensi's Motion for an Action for Defamation Against Defendants with Sworn Affidavit" filed by Robert Sensi ("Sensi"), originally named as a plaintiff but later dismissed from the suit; 4) a "Supplemental

---

[1] The plaintiff identifies himself as "Joseph Serian," however the book at issue in this case, *America at Night*, refers to him as "Joseph Seriani." Footnote 47 of Exhibit 2 to the Complaint explains that "Plaintiff Sensi, a CIA agent at the time, asked Plaintiff Serian to add the original ethnic vowel 'I', to his name to emphasize that Plaintiff Serian was of Italian-American rather than Armenian descent in 1982. Seriani then is interchangeable with Serian in this matter." This assertion is corroborated by former criminal proceedings against Serian, in which he was identified as both Serian and Seriani, which were listed as alternate aliases.

<u>**MEMORANDUM OPINION AND ORDER DISMISSING CASE**</u>

Motion to Plaintiff's Motion to Clarify so as not to Dismiss Case," filed by Serian; and 5) a "Motion for Judicial Notice" filed by the defendants.  For the reasons that follow, the Court **DENIES** Serian's Motion to Amend the Complaint (dkt. no. 29) and Supplemental Motion to Clarify (dkt. no. 46), **GRANTS** the defendants' Motion to Dismiss (dkt. no. 18), **GRANTS** the defendants' Motion for Judicial Notice (dkt. no. 49), and **DENIES-AS-MOOT** Robert Sensi's Motion for an Action for Defamation Against Defendants (dkt. no. 43).

## I. Procedural History

A thorough account of the procedural history of this case is necessary in order to understand its current posture.  On January 31, 2008, Serian filed a <u>pro</u> <u>se</u> Complaint on behalf of himself and two other individuals, Sensi and General Wayne Jackson ("Jackson").  In that Complaint, Serian alleges that, by writing and publishing the book <u>America at Night: The True Story of Two Rogue CIA Operatives, Homeland Security Failures, Dirty Money, and a Plot to Steal the 2004 U.S. Presidential Election – by the Former Intelligence Agent Who Foiled the Plan</u> ("<u>America at Night</u>"), Kolb and Penguin Group revealed classified information that invaded Sensi's privacy, defamed him, Serian and Jackson, and violated 50 U.S.C. §§ 421-426, which prohibits the disclosure of the identity of covert agents and national security information.  Serian

attached a copy of <u>America at Night</u> to his Complaint as "Exhibit 1." The claims asserted in Counts I and III of his Complaint pertain solely to Sensi, while the claim in Count II asserted a claim on behalf of Serian, Sensi, and Jackson. Serian simultaneously filed a "Motion to Proceed <u>in</u> <u>forma</u> <u>pauperis</u>" when he filed his Complaint.

In an Order dated June 20, 2008, the Court granted Serian's motion to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, and set a schedule for Serian to pay the filing fee. Moreover, after noting that the Complaint had only been signed by Serian, and not Sensi or Jackson, it also dismissed Counts I and III of the Complaint because Serian, who is not a lawyer and was acting <u>pro</u> <u>se</u>, could not lawfully bring claims on behalf of Sensi or Jackson. <u>See</u> dkt. no. 3, p. 9. Serian was permitted to proceed on Count II of his Complaint, which solely pertained to him.

On July 1, 2008, Serian paid his initial filing fee according to the payment schedule of the Court. Then, on July 8, 2008, Sensi sent a money order purporting to pay the balance of Serian's filing fee. On that same day, Serian and Sensi filed a "Motion for Joinder," asking that the Court require the joining of Serian and Sensi's claims because one is an indispensable party to the other, or grant permissive joinder. On July 22, 2008, the defendants

responded to Serian's Motion for Joinder and asked the Court for an extension of time to file their Joint Answer.  On August 6, 2008, the Court denied Serian's Motion for Joinder and granted the defendants' request for an extension of time to file a Joint Answer or otherwise respond to the Complaint.

On September 5, 2008, Penguin Group and Kolb filed a motion to dismiss, asserting that no relief could be granted on Serian's defamation claim because all of the allegedly defamatory statements were either true or protected opinion, neither of which is actionable under defamation law.

On October 14, 2008, Serian filed a "Notice of Appearance by Greg Bowling on Behalf of Serian," in which Mr. Bowling ("Bowling"), an attorney, sought leave to represent Serian in a very limited capacity, solely for the purpose of filing a response to the defendants' Motion to Dismiss.  Also on that same date, Serian, through Bowling, filed a "Response in Opposition re First Motion to Dismiss," in which he argued that he had sufficiently pled his claim under Rule 8(a) of the Federal Rules of Civil Procedure, and that he was defamed by Kolb's assertion in <u>America at Night</u> that Serian associates himself with Al-Qaeda sympathizers, thereby implying that he, Serian, is one.

<u>MEMORANDUM OPINION AND ORDER DISMISSING CASE</u>

On October 20, 2008, the defendants filed a "Reply to Response to First Motion to Dismiss Memorandum of Law in Support Reply Memorandum in Support of Defendants' Motion to Dismiss."  Shortly after this, on October 29, 2008, Bowling moved to withdraw as Serian's attorney, a motion the Court granted on November 13, 2008.  Before the Court granted Bowling's motion, however, Serian, acting <u>pro</u> <u>se</u>, filed a "Motion for Permission to Amend Complaint, or in the Alternative, Motion to Clarify, so as not to Dismiss Case."  In this motion, Serian sought leave to amend his Complaint without indicating what claims the amendments would include.  In the alternative, he sought to extend the time to "disprove the Defendants' venomous assertion that the Plaintiff is a crook, a liar, and a crazy person."  Dkt. No. 29, p. 1-2.

Kolb and Penguin Group filed a response to the Motion to Amend the Complaint on November 20, 2008, and then filed a subsequent amended response on November 21, 2008.  Following that, on December 3, 2008, Serian filed a "Reply to Amended Response to Plaintiff's Motion for Permission to Amend, or in the alternative, Motion to Clarify so as Not to Dismiss the Case."  In this reply, Serian made no new valid claims, but instead raised issues he believed had been wrongly decided in his past court actions, both criminal and civil.

<u>MEMORANDUM OPINION AND ORDER DISMISSING CASE</u>

On January 2, 2009, Sensi filed a document entitled "Former Plaintiff's Robert Sensi's Motion for an Action for Defamation Against Defendants," stating that he is interested in being part of the case, and arguing he was wrongly discharged in the first place. The defendants filed a "Response to Motion for Action for Defamation Against Defendant," asserting that Sensi's attempt to join Serian's claim should be denied because he is not a party to this action, had not filed any of his own pleadings, and had not argued anything other than what was set forth in Serian and Sensi's Motion for Joinder, which the Court had already denied.

Serian then filed a "Supplemental Motion to Plaintiff's Motion to Clarify so as not to Dismiss Case" on February 13, 2009, in which he claimed he had obtained new evidence to prove that his claim should prevail. This "new evidence" included a letter, allegedly written by Kolb to a man named Jonathan Leinwand, which had been forwarded to Sensi who then forwarded it to Serian. <u>See</u> dkt. no. 46, p. 1. Serian claims that this letter shows Kolb was a "spin doctor," who was hired to rewrite history to improve the reputation of a person named Engin Yesil ("Yesil"). In response to this motion, on February 18, 2009, Kolb and Penguin argued that Serian's motion does not assert any new, valid claim, and that if Serian believes Yesil has harmed him, he should sue Yesil.

Finally, on March 18, 2009, the defendants filed a "Motion for Judicial Notice," asking the Court to take notice of a ruling by the Honorable James A. Matish, Judge of the Circuit Court of Harrison County, West Virginia, who presided over the case of Joseph Serian d/b/a Med-Care America Co. v. Diane Urchak, et al., Civil Action No. 08-C-15-3. In that case, Judge Matish "determined as a matter of fact and law that the Plaintiff, Joseph Serian a/k/a Joseph Seriani, had LIED TO THE COURT." Dkt. No. 49, Ex. A, p. 6. (Emphasis in the original). To aid the Court, the defendants attached a copy of Judge Matish's order as Exhibit A to their motion.

## II. Facts

In Count II of the Complaint, which is the only remaining claim in the case, Serian alleges that Kolb defamed him in America at Night. In this book, Kolb, a former CIA agent whose identity has been publically disclosed, is asked by an official at the Department of Homeland Security to investigate an old acquaintance named Richard Hirschfeld ("Hirschfeld"). After Kolb began researching Hirschfeld and other people associated with him, he discovered that Hirschfeld and Sensi had worked for the Republican Party, perhaps solely for the Bush family, and that they had planned to release information before the 2004 presidential

election tying John Kerry's campaign treasurer to a company that sympathized with Al-Qaeda. Having discovered this plan, the book tracks Kolb's efforts to warn John Kerry about this plot, describes his attempts to stop this information from becoming public, and depicts the persons with whom Kolb made connections along the way.

Serian's name is referenced a number of times among those persons mentioned in America at Night, but only three are relevant to this action. In the first of those references, Kolb explains Serian's relationship with Hirschfeld, describing an incident in which Serian, posing as an "official" of Habitat for Humanity, sent a letter requesting that Hirschfeld be released from jail to work in a Habitat for Humanity work release program. America at Night, p. 58. In reality, Serian held no such position; nor was there any such "work release program." Id.

Serian is next mentioned in an email to Kolb from Nat Bynum ("Bynum"), a former employee of Hirschfeld. In that email, Bynum states that Serian is "very bright, very crazy, and a glib liar." America at Night, p. 165. Bynum then describes the contact lens business that Serian once owned, stating Hirschfeld was Serian's "silent" partner, and that Hirschfeld paid many of the expenses incurred by the company; after Hirschfeld left the United States,

someone else either took over the business or forced Serian and Hirschfeld to give it up. Id. at 168-69.

Finally, Serian is discussed during a conversation between Yesil, the man Serian alleges stole his contact lens business, and Kolb. America at Night, p. 206. Kolb alleges Yesil told him that his business partner, Yali, used to work for Serian, and that Serian's contact lens business was a good idea, but offered his opinion that Serian was a "bad businessman" and a "crook." Id. at 206-07. Yesil further indicated that Serian and Hirschfeld had conspired to defraud a court by creating a fake "deathbed confession" to be used in a civil RICO case against Yesil. Id. at 208-09.

### III. Serian's Motion to Amend

Initially, the Court must consider whether to grant Serian's motion to amend his Complaint and his "Supplemental Motion to Clarify." Federal Rules of Civil Procedure Rule 15(a)(1) states that "[a] party may amend its pleading once as a matter of course: (A) before being served with a responsive pleading; or (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar." Fed. R. Civ. P. 15(a)(1). Here, Serian did not file his motion to amend until after Kolb & Penguin had moved to dismiss; thus, the time in

which Serian could have amended his Complaint as a matter of right has expired.

Rule 15(a)(2)states that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In this case, the opposing party has not consented. Accordingly, Serian may only amend his Complaint with the leave of the Court. <u>U.S. ex rel Wilson v. Kellogg, Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008).

Serian's motion to amend never explains how he wants to amend his Complaint; he alleges no new or additional claims, nor seeks to add any additional defendants. Rather, he focuses on previously litigated issues, alleging, for example, that Engin Yesil stole his contact lens company and is responsible for his prior criminal conviction for mail fraud. Serian also attaches to his motion documents for the Court to consider. These set forth no new information, however, nor any argument that would enhance Serian's existing defamation claim against Kolb and Penguin Group. Rather, they purport to show that Yesil and an accomplice forced an innocent person at gun-point to testify against Serian in a prior lawsuit. These assertions are unrelated to Serian's alleged

defamation claim and do not constitute a viable new claim.  For that reason, the Court **DENIES** Serian's Motion to Amend the Complaint (dkt. no. 29).

Serian's Supplemental Motion to Clarify seeks to provide "newly discovered evidence" purportedly supporting his Complaint. This "evidence" consists of an email, allegedly forwarded to Serian from Sensi, that was forwarded to Sensi from Jonathan Leinwand, who allegedly had received it from defendant Kolb.  Serian asserts that the email establishes that Kolb and Yesil are in business together, and that Yesil "hired" Kolb to "reconstruct Yesil's jaded history." Dkt. No. 46, p. 3.  Serian further alleges that this "evidence" exposes Kolb's motive in authoring <u>America at Night</u>, and is therefore relevant to this lawsuit.  Additionally, Serian attaches several magazine articles about Yesil.

No legal basis exists for considering this so-called additional "evidence" in connection with the defendants' motion to dismiss, inasmuch as it primarily focuses on Yesil, who is not a party to the instant suit.  While Serian alleges that Kolb wrote <u>America at Night</u> at Yesil's behest, that allegation, even if true, would not alter the analysis of whether Serian was defamed in the book.  Accordingly, the Court **DENIES** Serian's Supplemental Motion

to Clarify (dkt. no. 46), and declines to consider the additional "evidence" in conjunction with the defendants' motion to dismiss.

## IV.  Motion to Take Judicial Notice

The Defendants ask that the Court take judicial notice of an order entered by Judge Matish in which he concluded, both as matters of law and fact, that Serian had lied to the court. Federal Rule of Evidence 201 permits a court to take judicial notice of a fact, if the fact is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice at a party's request or sua sponte. Id. at 201(c).  If, however, a party requests a court to take judicial notice, and provides the necessary information, then the court is required to do so.  Id. at 201(d).  "Judicial notice may be taken at any stage of the proceeding."  Id. at 201(f).

The Supreme Court of the United States has noted that courts may take judicial notice of "items in the public record," even when considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6).  Papasan v. Allain, 478 U.S. 265, 269 n. 1 (1986).  In a similar vein, the Fourth Circuit has held that "in

reviewing the dismissal of a Complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record." Secretary of State for Defence v. Trimble Navigation Limited, 484 F.3d 700, 705 (4th Cir. 2007).

Here, the defendants have properly moved the Court to take judicial notice of Judge Matish's findings in Joseph Serian d/b/a Med-Care America Co. v. Diane Urchak, et al., Civil Action No. 08-C-15-3. Pursuant to Federal Rule of Evidence 201(d), the Court is compelled to do so, and, accordingly, **GRANTS** the defendant's motion (dkt. no. 49). Moreover, acting on its own accord, pursuant to Rule 201(c), the Court takes judicial notice of two additional lawsuits involving Serian, both federal felony convictions: U.S. v. Seriani, 1997 WL 701411 (4th Cir. Nov. 12, 1997) (unpublished); and U.S. v. Serian, 895 F.2d 432, 433 (8th Cir. 1990).

### V.  Motion to Dismiss the Complaint

In their motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), Kolb and Penguin Group argue that Serian has failed to state a claim upon which relief may be granted because all of the allegedly defamatory statements are either true or protected opinions, and, therefore, not actionable.

## MEMORANDUM OPINION AND ORDER DISMISSING CASE

### A. Legal Standards

A pro se filing is "to be liberally construed," and "a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). Even under such a liberal standard, however, courts have the authority to dismiss actions that are demonstrably frivolous or malicious, or that fail to state a claim for which relief can be granted.  28 U.S.C. § 1915(e)(2)(B).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Once a claim has been adequately stated, it may be supported by showing any set of facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556).  A claim must be dismissed, however, if it is merely conceivable and fails to cross "'the line from conceivable to plausible.'" Id. at 1950-51 (quoting Twombly, 550 U.S. at 570).

14

**MEMORANDUM OPINION AND ORDER DISMISSING CASE**

Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  In the instant case, Serian attached a copy of <u>America at Night</u> as "Exhibit 1" to his Complaint, thus making it part of the pleadings.  Moreover, as previously explained, courts may properly consider matters of public record of which they have taken judicial notice when ruling on motions to dismiss.  Thus, because the Court has denied Serian's motion to supplement his pleadings with unrelated documents, it will only consider information contained in the pleadings and in matters of which it has taken judicial notice; the motion to dismiss, therefore, need not be converted into a motion for summary judgment.

**B.  Defamation**

Under well-settled West Virginia law, a plaintiff seeking to prove a defamation action must establish the following elements: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6)resulting injury." <u>Crump v. Beckley Newspapers, Inc.</u>, 320 S.E.2d 70, 77 (W.

Va. 1984).  Thus, to survive a motion seeking to dismiss his defamation claim,  Serian must have pled sufficient facts as to each of the elements set forth in <u>Crump</u> such that the Court can find his claim plausible on its face.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949, 1955.

### 1. Defamatory Statements

As to the first element of his claim, Serian must allege that defamatory statements were made against him.  A statement can be defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>Id.</u>  Defamatory statements do not have to be direct statements; defamation can be shown through inference, implication, innuendo or insinuation.  <u>Id.</u> Furthermore, statements may be defamatory "on their face or by inference combined with extrinsic facts that give rise to a meaning that damages a person's reputation."  <u>Workman v. Kroger Limited Partnership I</u>, 2007 WL 2984698 (S.D.W. Va. 2007)(unpublished).

In <u>America at Night</u>, Serian is specifically mentioned several times in connection with defamatory statements.  He is called "very crazy and a glib liar," (<u>America at Night</u>, p. 165), a "bad businessman," (<u>id.</u> at 206), and a "crook," (<u>id.</u> at 207).  Because these statements, if believed, could damage Serian's reputation by

16

lowering him in the estimation of the community, they qualify as defamatory statements under Crump.  Indeed, they could foreseeably cause the public to be leery of entering into business with Serian, or otherwise associating or dealing with him.  Thus, Serian has alleged sufficient facts to state a plausible claim as to the first element of defamation.  See Crump, 320 S.E.2d at 77.

Defamatory statements also may be found through innuendo, inference, implication or insinuation.  Crump, 320 S.E.2d at 77. Serian's Complaint alleges that Sensi is described as an Al-Qaeda sympathizer, a supporter of terrorism against the United States, as causing political corruption, and is accused of substantially affecting the outcome of the 2004 United States Presidential election.  Dkt. no. 1, p. 5.  Serian thus alleges that, based on his relationship with Sensi, he is defamed by innuendo and association.

Because defamatory statements need not be direct, allegations against Sensi could also defame Serian, if, in fact, Serian is connected to them by innuendo and association.  See Crump, 320 S.E.2d at 77.  America at Night was published in 2004, just three (3) years after the September 11th attacks on the World Trade Center by the terrorist organization, Al-Qaeda; put in such a context, being called an "Al-Qaeda sympathizer" would defame a person's

character, because the connection could certainly lower an individual's esteem in his community.  Id.

In addition, an insinuation that Serian was involved in corrupting politics or fraudulently altering the outcome of an election also would be defamatory.  A person's esteem in the community would surely decline if they are described to others as being involved in political corruption; indeed, trust in that person would dwindle so that others may decide not to associate with them.  Thus, Serian has sufficiently alleged the first element of his defamation claim, by asserting both statements directly calling his character into question, and statements allegedly connected to him by innuendo that would also be defamatory.

## 2. Nonprivileged Communication to a Third Party

The second element of a defamation claim requires that the writing be a nonprivileged communication to a third party.  There are two types of privileged communications: absolute and qualified. Id.  An absolute privilege is limited to "those situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives." Id.  Absolute privilege is usually limited to legislative, judicial, and quasi-judicial proceedings and other acts of the State.  Id.  Also, an absolute privilege can occur when a plaintiff

has consented to the writing.  Id.  In the instant case, no absolute privilege applies because Serian did not consent to this writing, and the book is not an act of the State, or a legislative or judicial proceeding.

A qualified privilege is "based upon a public policy that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interests, the interests of third persons or certain interests of the public." Id. at 707.  The West Virginia Supreme Court of Appeals has stated that "a qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." Id. Although Kolb had an interest in the subject of his book, and an argument could be made that he wrote the book in good faith, he did not limit the distribution of his book to people with a legitimate interest in the subject matter.  The book was published for entertainment and was printed and sold across the United States to the general public.

For these reasons, America at Night can be considered a nonprivileged communication to a third party.  Therefore, Serian

has alleged sufficient factual matter to state a plausible claim for relief on this element of his defamation claim.

### 3. Falsity

Serian also must prove that the defamatory statements in <u>America at Night</u> are false. Article III, § 8 of the West Virginia Constitution states that "[i]n . . . civil suits for libel, the truth may be given in evidence; and if it shall appear to the jury, that the matter charged as libelous, is true, and was published with good motives, and for justifiable ends, the verdict shall be for the defendant." W. Va. Const. art. III, § 8. Thus, truth is a complete defense to an allegation of defamation. <u>See id.</u> Similarly, "statements of opinion are absolutely protected under the First Amendment and cannot form the basis for a defamation action." <u>Maynard v. Daily Gazette Company</u>, 447 S.E.2d 293, 295 (W. Va. 1994). Importantly, "whether a statement is one of fact or opinion is an issue that must be decided initially by a court." Syl. Pt. 7, <u>Long v. Egnor</u>, 346 S.E.2d 778 (W. Va. 1986).

As noted earlier, Serian is explicitly mentioned within the context of defamatory statements in three places. Specifically, he is called "very crazy and a glib liar," a "bad businessman," and a "crook."

<u>MEMORANDUM OPINION AND ORDER DISMISSING CASE</u>

The defendants argue that Serian is, in fact, a liar, and thus the reference to him as a "glib liar" can be defended as true. As proof, they point out that Serian was convicted of three counts of obstruction of justice and one count of "conspiracy for attempting to obtain the premature release of three federal prisoners by sending false letters to two United States District Judges and one United States Attorney" in the United States District Court in the Eastern District of Virginia, a conviction affirmed on appeal. <u>U.S. v. Seriani</u>, 1997 WL 701411 *1 (4th Cir. Nov. 12, 1997) (unpublished). The conspiracy conviction related to the three letters Serian sent, while claiming to be an official of Habitat for Humanity, in which he requested that three federal prisoners be released from jail to work for Habitat for Humanity's "work release program." <u>Id.</u> In reality, Serian lied about holding such a position at Habitat for Humanity and fabricated the work release program. <u>Id.</u> at *3.

As Serian's convictions in the United States District Court for the Eastern District of Missouri for mail fraud, wire fraud, fraud of financial institutions, and delivery of misbranded devices establish, he also lied in his business dealings with customers. <u>U.S. v. Serian</u>, 895 F.2d 432, 433 (8th Cir. 1990). These convictions were specifically based on lies Serian told when he

took money from customers for contact lens products that he never delivered. He was convicted by two federal juries of fraudulent acts, and these convictions were affirmed on appeal. Id. Given these convictions, the statement that Serian is a "glib liar" is not false and therefore not actionable.

For similar reasons, the statement that Serian is a "crook" is also true and not actionable. While in the contact lens business, Serian received orders for contact lenses, which he never properly filled; nevertheless, he either kept his customers' money without sending the products, or bought a different brand of contacts than those ordered by the customer, which he then sent in a discrete package so that the customer would not suspect receipt of a different brand. Id. Because these actions led to federal felony convictions, the statement that Serian is a "crook" is hardly false.

The statements that Serian is "very crazy" and a "bad businessman" are subjective opinions that are not actionable as defamation. See Maynard, 447 S.E.2d at 295. In Maynard, the West Virginia Supreme Court of Appeals noted that "a statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." Id. at 299. In Hupp v. Sasser, 490 S.E.2d 880, 887 (W. Va. 1997), West Virginia's

highest court held that calling someone a "bully" was not actionable, because "the threshold of what constitutes bullyism to one would necessarily not be the same for another individual." Similarly, what would constitute being a "bad businessman" or "crazy" to one person may well be different to another. Accordingly, the Court finds that these statements are not actionable. See also Lieberman v. Fieger, 338 F.3d 1076, 1081 (9th Cir. 2003) (calling someone "Looney Tunes," "crazy," "nuts," and "unbalanced" are all statements of opinion and thus, protected speech.)

Because all the defamatory statements in America at Night referencing Serian are either true or statements of opinion, the Court concludes that Serian has failed to allege sufficient facts to state a claim for defamation as to those statements.

### 4. Reference to the Plaintiff

Although the specific references to Serian as being "very crazy," "glib liar," "bad businessman" and "crook," are either true or opinions that are not actionable, Serian additionally claims that he has been defamed in America at Night through statements of association and innuendo. Specifically, he contends that Kolb defamed him by association, by writing that Serian's friends and acquaintances were Al-Qaeda sympathizers involved in corrupting

23

politics who had substantially affected the outcome of the 2004 presidential election. Serian is not specifically named in connection with these assertions; rather, he claims he was defamed as a result of his friendship with those who are directly named.

The fourth element of a claim for defamation requires that the defamatory statements reference the plaintiff. A direct statement is not necessary, however, and defamation may be accomplished through inference, implication, innuendo or insinuation. Crump, 320 S.E.2d at 77.

It is true that the people with whom Serian associated are described by Kolb as Al-Qaeda sympathizers. No innuendo or inference, however, links Serian as an Al-Qaeda sympathizer. Kolb links Yesil to Al-Qaeda, but even that connection is indirect, through Yesil's telecommunications business which inadvertently was the ideal choice of phone system for Al-Qaeda. America at Night, p. 72. Yesil additionally started a pre-paid credit card company that also was largely used by Al-Qaeda. Id. Although Kolb states that Yesil was a partner, and under the control of Hirschfeld and Sensi, nowhere does he ever allege that Serian was involved with these businesses.

America at Night does allege that Serian befriended and associated with Hirschfeld; however, the book connects them only as

partners in Serian's contact lens business, and through Serian's scheme to send fraudulent Habitat for Humanity letters to secure Hirschfeld's release from prison.  Therefore, although Kolb may imply that Hirschfeld and Sensi are Al-Qaeda sympathizers, he does not, even by implication, allege Serian's association or involvement with Al-Qaeda or that he is an Al-Queda sympathizer.

Serian's second argument is that he was defamed by Kolb's assertion that people with whom Serian associated were involved in political corruption.  Again, however, whenever <u>America at Night</u> discusses political corruption, it only mentions Hirschfeld and Sensi, not Serian.  Nowhere in the book does it state or imply that Serian was involved in an alleged plot to ensure George W. Bush's victory in the 2004 presidential election.  Thus, there are no direct words, nor any inferences, indicating that Serian played any role in the campaign scandal.

A mere claim that Serian associated with Hirschfeld, and, through Hirschfeld, with Sensi, does not, by itself, implicate Serian in any scandal. "[T]hat one is married to, associated with, or in the company of a criminal does not support the inference that that person is a criminal or shares the criminal's guilty knowledge." <u>U.S. v. Polasek</u>, 162 F.3d 878, 883 (5th Cir. 1998) (<u>citing</u> <u>U.S. v. Forrest</u>, 620 F.2d 446, 451 (5th Cir. 1980)).  A

person may befriend or even associate in business with someone
without necessarily being associated with all of that person's
acts, criminal or otherwise.

Similarly, Serian's argument that he was defamed by having
been associated with actions "substantially affecting the outcome
of the 2004 presidential elections" is without merit.  In <u>America
at Night</u>, Kolb alleges that he stopped Hirschfeld and Sensi from
bringing the Kerry/Al-Qaeda information to the public's attention,
and thus, foiled the plot to impact the election. Serian cannot be
defamed by association with an action that never occurred.
Moreover, as the Court has already concluded, Serian was not
connected by association or otherwise to allegations in the book of
political corruption. Also, nor does the book imply that Serian was
connected to Hirschfeld and Sensi's failed plot to foil the 2004
election.

Consequently, the Court finds that Serian has failed to
present sufficient evidence to plausibly establish a claim that he
was defamed in <u>America at Night</u> by statements made through
association and innuendo.

**5.  At Least Negligence on the Part of the Publisher**

Serian additionally fails to allege sufficient facts to
establish the fifth element of a defamation claim, that there must

be at least negligence on the part of the publisher. <u>Crump</u>, 320 S.E.2d at 77. In <u>Crump</u>, the West Virginia Supreme Court stated that, in order to recover actual damages for a non-constitutional defamation claim, a person need only prove simple negligence: the conduct of the defendant is to be measured against what a reasonably prudent person would have done under the same or similar circumstances. <u>Id.</u> To recover punitive damages, however, a person must show either an intentional publication of false defamatory material or a publication of false defamatory material or reckless disregard for its truth or falsity. <u>Id.</u> at 77 n.3.

Serian alleges that <u>America at Night</u> was published by "the defendants with malice and oppression, and defendants were also guilty of negligence or acted recklessly in failing to determine the truth of the published matter prior to publication or that defendants published the article with knowledge that it was false." Dkt. no. 1, p. 5-6. He seeks both actual and punitive damages.

Although broadly asserting that the defendants acted unreasonably by publishing the book, Serian alleges no basis, other than claiming that the statements in <u>America at Night</u> are untrue. Because this Court has already concluded that the statements are, in fact, either true or protected opinion, Serian has failed to allege sufficient facts that Penguin Group negligently or

intentionally published false, defamatory material, or published false, defamatory material in reckless disregard for its truth or falsity.  Accordingly, his allegations fall short of the necessary proof as to this element as well.

### 6. Resulting Injury

Finally, Serian must allege facts sufficient to indicate that he was injured as a result of the alleged defamation.  In his Complaint, Serian alleges that he has been impaired in pursuing professional opportunities; he also claims he has suffered loss of reputation, shame, mortification and hurt feelings.

The Court need not decide whether Serian has sufficiently alleged injury, however, because he has failed to state a plausible claim of defamation.  Each alleged defamatory statement is either true or mere opinion, and Serian has failed to present facts connecting him through association or innuendo as an Al-Queda sympathizer or an election spoiler.  Because Serian has not alleged sufficient facts to show he can succeed on all of the  elements of a claim for defamation, his claim must be dismissed. The Court, therefore, **GRANTS** the defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

### VI. Sensi's Motion for an Action for
### Defamation Against Defendants

Having disposed of Serian's defamation claim, the Court turns now to Sensi's "Motion for an Action for Defamation Against Defendants." In that "motion," Sensi asserts that he always intended to be a part of the lawsuit, and that the Court should not have dismissed him as a plaintiff. He also claims that the original Complaint was "well-pled" and met all of the requirements of the Federal Rules of Civil Procedure. The Court's original finding, however, was that Serian, acting pro se, had no standing to bring a lawsuit on behalf of Sensi. Thus, it committed no error when it dismissed Sensi from the original Complaint.

Moreover, because the Court has granted Kolb and Penguin Group's motion to dismiss, Sensi's "Motion for an Action for Defamation Against Defendants," filed in connection with Serian's Complaint, is moot. To the extent he believes he has viable claims against Kolb and Penguin Group, Sensi must file his own lawsuit.

### VII. Conclusion

For the reasons discussed, the Court **DENIES** Serian's Motion to Amend the Complaint (dkt. no. 29) and his Supplemental Motion to Clarify (dkt. no. 46), **GRANTS** the defendants' motion to take judicial notice (dkt. no. 49), **GRANTS** the defendants' Motion to

29

Dismiss the Complaint (dkt. no. 18), **DENIES AS MOOT** Sensi's Motion for an Action for Defamation Against Defendants (dkt. no. 43), and **DISMISSES** the case **WITH PREJUDICE**, and **STRIKES** it from the Court's docket.

It is so **ORDERED**.

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of this Order to counsel of record and to the <u>pro se</u> plaintiff Joseph Serian and former <u>pro se</u> plaintiff, Robert Sensi, by certified mail, return receipt requested.

DATED: July 23, 2009

<u>/s/ Irene M. Keeley</u>
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE